Brent T. Robinson, Esq.
ROBINSON ANTHON & TRIBE
Attorneys at Law
615 H Street
P. O. Box 396
Rupert, Idaho  83350
Telephone No. (208) 436-4717
Facsimile No.  (208) 436-6804
ISB #1932
btr@idlawfirm.com

Attorneys for Debtor(s)

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re: ) | Case No. 10-41613 |
| ) | (Chapter 11) |
| HOLLIFIELD RANCHES, INC., and ) | |
| Hollifield Ranches, Inc., as successor ) | |
| to Double H Cattle, LP, ) | |
| Double H Cattle, Inc., ) | |
| White Gold Dairy, LLC, ) | |
| White Gold Dairy, Inc., ) | |
| Taylor & Dad, LLC, and ) | |
| Taylor & Dad Investments, Inc., ) | |
| by merger, ) | |
| ) | |
| Debtor. ) | |

MOTION FOR EMERGENCY
AND CONTINUING USE OF CASH COLLATERAL

COMES NOW the debtor in the above-entitled matter and, pursuant to 11 USC §363, moves the Court on an emergency and continuing basis for an order authorizing debtor in possession to use cash collateral.  This motion is made and based upon the following facts:

1. Debtor filed a petition under Chapter 11 of the United States Bankruptcy Code on September 9, 2010, and continues in possession of its property and the operation of its business as debtor in possession.

2. To the best of debtor's knowledge, information and belief, the secured creditor claiming a lien is KeyBank. As of the date of the petition, the amount owed to said creditor is the approximate sum of $12,629,375 ($1,547,514 White Gold cattle loan) (White Gold feed and operating loan $1,801,708) (Double H Cattle operating loan $3,012,144) (Hollifield Ranches operating loan $6,109,197) (Hollifield Ranches equipment loan $158,812) and it is the cash collateral of said creditor that is sought to be used by the debtor.

3. In the course of debtor's operation, debtor has collected with respect to the farming operation $483,687.34, with respect to the cattle operation $2,535,549.23, and with respect to the dairy, collects approximately $583,000 per month.

4. The proceeds from the sale of milk and livestock will be used to pay operating expenses of the dairy.

5. The farm proceeds will be used to continue to mature and harvest the farm crops.

6. The cattle proceeds will be used to continue the cattle operation.

7. In accordance with the requirements of 11 USC §363(c)(4), such proceeds will be segregated into a separate bank account.

8. Debtor does not have sufficient income to continue its operation without the use of cash collateral, and seeks authorization to use cash collateral on an interim basis and on a continuing basis during 2010 to pay operating expenses.

9. By this motion, debtor requests authorization to use cash collateral on an emergency basis, pending a final hearing on this motion, to pay the line item expenses set forth in the attached cash flow budgets attached hereto as Exhibit "A" (dairy budget), Exhibit "B" (farm budget) and Exhibit "C" (cattle budget).

10. In addition to the use of cash collateral on an emergency basis pending a final hearing on this motion, debtor also seeks authorization to continue to use of cash collateral from and after the date of the final hearing through December 31, 2010. However, it

is the intent of the debtor, prior to the final hearing, to develop a budget that puts it through April 1, 2011. It is also anticipated that before a Plan can be confirmed in this matter, that the cash collateral will have to be continued into the Year 2011.

11. The amount of cash collateral sought to be used during the emergency period for the months of September and part of October, 2010, are shown on the attached budgets.

12. If the debtor is not permitted to use cash collateral to pay ongoing operating expenses, debtor will be unable to continue its operation, and will be unable to fund the Plan to be proposed hereafter. All of the expenses sought to be paid on an emergency basis are necessary in order for the debtor to continue its operation. If the debtor is not allowed to use cash collateral on an emergency and on a continuing basis the debtor will suffer irreparable harm, which will be detrimental not only to the debtor but also to all creditors and other parties in interest.

13. Debtor's projected income from the sale of milk and livestock is reflected on Exhibit "A." Exhibit "B" provides the amount of income that will come off the crop and Exhibit "C" as to the cattle operation.

14. Debtor is willing to give adequate protection to KeyBank by granting a post-petition lien in the same priority and to the extent it existed pre-petition and also to the extent of the cash collateral used in all collateral that it had an interest in pre-petition.

15. If the Court determines the adequate protection proposed by the debtor is not sufficient, then debtor requests that a determination be made as to the amount to be paid as adequate protection.

16. As best as it can be determined by the debtor based upon current market values, the estimated fair market value of the collateral sought to be used is shown on Exhibits "A," "B" and "C." That the value of the collateral in which KeyBank has a lien, including the lien

Motion . . . Use of Cash Collateral - 3

it also has in property owned by Terry Hollifield and his wife, is well in excess of the amount of the indebtedness owed to KeyBank.

17. In the event any creditor's names appear on any checks received from the sale of milk and livestock, said parties should be required to endorse the same.

18. This motion is made in accordance with the guidelines set forth in the local bankruptcy rules pertaining to motions for use of cash collateral, and does not contain any provisions that would not normally be approved by the Court.

WHEREFORE, debtor in possession prays that an order be issued granting debtor in possession the right to use cash collateral on an emergency and a continuing basis, namely, crop proceeds and proceeds from the sale of milk and livestock to pay the ongoing expenses set forth in the budgets that are attached hereto and by reference made a part hereof, and that debtor be entitled to do so until further order of this Court. Debtor further requests that all parties named on checks be required to endorse all checks received from the sale of milk, livestock or crops, to the extent of the cash collateral authorized to be used by the debtor.

DATED this 9th day of September, 2010.

                                      ROBINSON ANTHON & TRIBE

                                      By:/s/ Brent T. Robinson
                                          Brent T. Robinson
                                          Attorney for Debtor