Randall A. Peterman, ISB No. 1944
Noah G. Hillen, ISB No. 7690
MOFFATT, THOMAS, BARRETT, ROCK &
   FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho  83701
Telephone  (208) 345-2000
Facsimile  (208) 385-5384
rap@moffatt.com
ngh@moffatt.com
18794.0216

Attorneys for KeyBank National Association

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>HOLLIFIELD RANCHES, INC.,<br><br>                 Debtor. | Case No. 10-41613-JDP<br>Chapter 11 |

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR EMERGENCY USE AND CONTINUING USE OF CASH COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY**

       COMES NOW KeyBank National Association ("KeyBank") and files this Objection of KeyBank to Debtor's Motion for Emergency Use and Continuing Use of Cash Collateral as to Double H Cattle, LP Only ("Double H Objection") to the Motion for Emergency Use and Continuing Use of Cash Collateral (CR 5) ("CC Motion") filed by Hollifield Ranches, Inc. ("Debtor") in this matter.

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR
EMERGENCY USE AND CONTINUING USE OF CASH
COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY - 1**

### I. THE RELATIONSHIP BETWEEN KEYBANK AND THE DEBTOR AND THE ENTITIES

1. Debtor filed its Chapter 11 petition in bankruptcy on September 9, 2010, ("Petition Date").

2. Prior to the Petition Date, the Debtor was composed of at least the following seven different entities ("Entities"):

- Double H Cattle, Limited Partnership ("Double H"). Double H was an entity that bought, raised and sold cattle.

- Double H Cattle, Inc. This entity was created to merge the limited partnership into Hollifield Ranches, Inc.

- Hollifield Ranches, Inc. ("Hollifield Ranches"). Hollifield Ranches was an entity that raised farm crops, some of which were transferred or sold to White Gold Dairy, LLC (as identified below).

- White Gold Dairy, L.L.C. ("White Gold Dairy"). White Gold Dairy was an entity that owned and operated a dairy in Hansen, Idaho.

- White Gold Dairy, Inc. This entity was created to merge the limited partnership into Hollifield Ranches, Inc.

- Taylor & Dad Investments, Inc. ("Taylor & Dad"). KeyBank is unaware of the business purpose of Taylor & Dad.

- Taylor & Dad Investments, L.L.C. KeyBank is unaware of the business purpose of this entity.

3. Prior to the Petition Date, all of the Entities were controlled, in whole or in substantial part, by Terry G. and Carol Hollifield ("Individual Hollifield"). Individual Hollifield has not filed a Chapter 11 petition in bankruptcy.

4. One day prior to the Petition Date, all of the Entities were merged into the Debtor.

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR
EMERGENCY USE AND CONTINUING USE OF CASH
COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY - 2**

Client:1789791.1

5.  The Entities, and each of them, have executed loan documents ("Loan Documents") in favor of KeyBank. The approximate indebtedness owed by each such Entity to KeyBank is as follows:

- Double H is indebted to KeyBank in the approximate amount of $3.1 million, plus accruing interest, costs and fees ("Double H Debt"). The Double H Debt is collateralized by a first perfected security interest in virtually all of the personal property of Double H, but none of the real property of Double H.

- Hollifield Ranches is indebted to KeyBank in the approximate amount of $6.1 million, plus accruing interest, costs and fees ("Hollifield Ranches Debt"). The Hollifield Ranches Debt is collateralized by a first perfected security interest in virtually all of the personal property of Hollifield Ranches, but none of the real property of Hollifield Ranches.

- White Gold Dairy is indebted to KeyBank in the approximate amount of $3.25 million, plus accruing interest, costs and fees ("White Gold Dairy Debt"). The White Gold Debt is collateralized by a first perfected security interest in virtually all of the personal property of White Gold Dairy, but none of the real property of White Gold.

- KeyBank is unaware of the business purpose of Taylor & Dad. KeyBank may hold an interest in the equity of Taylor & Dad to the extent that such equity is property of the estate of the Entities.

6.  The Entities, and each of them, have guaranteed the indebtedness owed by the other Entities to KeyBank, through the execution of guarantees ("Guarantees"). Furthermore, such Guarantees executed by each of the Entities are collateralized by the same collateral as secures the principal obligations of each such Entity to KeyBank. As a result, each such Entity is jointly and severally liable for the entire amount due KeyBank by the Entities.

## II.   DOUBLE H'S CONTRACT WITH TYSON

7.  Prior to the petition date, Double H bought, fattened and sold cattle on its own behalf.

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR
EMERGENCY USE AND CONTINUING USE OF CASH
COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY - 3**

Client:1789791.1

8.  Under the terms of the Loan Documents, KeyBank advanced funds to Double H for the operation of its cattle business.

9.  Under the terms of the Loan Documents, KeyBank held a floating first priority security interest in the Double H cattle and the proceeds of the Double H cattle.

10. Under the terms of the Loan Documents, Double H made regular payments to KeyBank.

11. Commencing in April of 2010, Double H changed its operation, such that Double H no longer bought, fattened and sold cattle on its own behalf. Instead, Double H entered into a contract with Tyson Fresh Meats, Inc. ("Tyson"), and terminated its business plan by which Double H bought, fattened and sold cattle on its own behalf.

12. Commencing in April of 2010, Double H entered into a "Tyson Fresh Meats Cattle Feeding Arrangement with Double H Cattle Co." ("Tyson Contract"), a copy of which is attached as **Exhibit A**. Under the terms of the Tyson Contract, Double H completely changed its business model.

13. Under the terms of the Tyson Contract, Tyson and Double H agreed as follows:

- Tyson and Double H agreed that *Double H "will procure feeder cattle . . . and provide feeding space" for 10,000 head of cattle per year.* (Tyson Contract, p. 1, "Procurement and Volume.") To KeyBank's best knowledge, information and belief, the Tyson Contract accounts for the entirety of the capacity of Double H.

- Tyson and Double H agreed that, "Double H . . . will feed and manage the cattle to an acceptable finished weight and provide them to [Tyson's] Pasco, WA Plan for slaughter during the term hereof." (*Id.*) KeyBank is unaware of the "acceptable finished weight" under the terms of the Tyson Contract.

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR
EMERGENCY USE AND CONTINUING USE OF CASH
COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY - 4**

Client:1789791.1

- Tyson and Double H agreed that Double H would procure cattle for Tyson, and that Tyson would "reimburse Double H . . . for all purchase costs upon review and approve by appropriate [Tyson] management." (*Id.*, "Funding of Cattle.")

- Tyson and Double H agreed that *the cattle subject to the Tyson Contract would be sold at prices reflected in Tyson's "Northwest True Value Grid."* (*Id.*, p. 2, "Cattle Delivery and Market Value.") Despite KeyBank's efforts to obtain a copy of such document, the terms of the Grid are unknown to KeyBank.

- Tyson and Double H agreed that, "[Tyson] will be responsible for management of market risks through use of hedging practices on the cattle placed for feeding under this agreement. . . ," and that "The gain/loss resulting from this hedging activity will be included in settlement between Double H . . . and [Tyson] for each lot of cattle." (*Id.*, p. 2, "Risk Management.")

- Tyson and Double H agreed that if the hedging activity of Tyson resulted in a loss, that loss would be borne by Double H, not Tyson. (*Id.*, p. 3, Example #2.)

- Tyson and Double H agreed that all payments for cattle and feed, representing the overhead of Double H under the terms of the Tyson Contract, would initially be made by Double H, then reimbursed to Double H by Tyson, by an amount equal to the principal amount due, plus interest at LIBOR plus 4%. (*Id.*, p. 2, "Interest Costs.")

- Tyson and Double H agreed to a three-year term, with either party to the contract able to terminate it upon written notice. (*Id.*, p. 3.)

14. The Tyson Contract places the entire risk of loss for Tyson's hedging activities upon Double H.

15. The Tyson Contract clearly contemplates that none of Double H's cash collateral will be utilized by Double H in fulfilling the Tyson Contract.

16. The Tyson Contract anticipates that none of the cattle subject to the Tyson Contract are property of the estate of Double H.

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR
EMERGENCY USE AND CONTINUING USE OF CASH
COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY - 5**

Client:1789791.1

### III. THE DEBTOR'S CASH COLLATERAL

17. Since execution of the Tyson Contract in April of 2010 by Double H, Double H has accumulated over $2.6 million in cash collateral ("Double H Cash Collateral on Hand"), all as represented by Double H to KeyBank in **Exhibit B** attached hereto.

18. To KeyBank's best knowledge, information and belief, Double H continues to hold between $100,000 and $300,000 of cattle ("Remaining Cattle"), which are property of the estate of Double H, and which are subject to KeyBank's first perfected security interest.

19. To KeyBank's best knowledge, information and belief, Double H intends to sell the Remaining Cattle and add the proceeds of such sale to the Double H Cash Collateral on Hand.

20. KeyBank has filed a Motion for Stay Relief as to the Double H Cash Collateral on Hand, and the Remaining Cattle, and the proceeds of the remaining Cattle.

21. Double H's change of its business plan to the Tyson Contract justifies entry of an order of this Court refusing the right of Double H to use cash collateral.

### IV. THE DEBTOR'S CC MOTION

22. On the Petition Date, the Debtor filed its CC Motion.

23. In the CC Motion, paragraph 6, the Debtor proposes as to Double H that, "The cattle proceeds will be used to continue the cattle operation."

24. In the CC Motion, paragraph 13, the Debtor proposes as to Double H that, "Debtor's projected income from the sale of milk *and livestock* is reflected on Exhibit A. Exhibit B provides the amount of income that will come off the crop and Exhibit C as to the cattle operation."

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR
EMERGENCY USE AND CONTINUING USE OF CASH
COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY - 6**

Client:1789791.1

25. In the CC Motion, paragraph 14, the Debtor proposes a *replacement lien* as adequate protection as to Double H: "Debtor is willing to give adequate protection to KeyBank by granting a post-petition lien in the same priority and to the extent it existed pre-petition and also to the extent of the cash collateral used in all collateral that it had an interest in pre-petition."

26. Exhibit C to the CC Motion is the Double H budget ("Double H Budget").

27. Under the terms of the Double H Budget, Double H proposes that under the Tyson Contract it obtains $1,275,000 in income per month.

28. Under the terms of the Double H Budget, Double H proposes that its expenses are $1,237,000 per month. Such expenses include an expense line item for "cattle purchases" in the amount of $700,000 per month, and "feed purchases of $400,000 per month."

29. Since the Petition Date, KeyBank has communicated with Debtor's counsel regarding the disparities between the Double H Budget and the Tyson Contract, to no avail.

30. The CC Motion for Double H does not propose that the Double H Cash Collateral on Hand be turned over to KeyBank, despite the change in the business plan represented by the Tyson Contract.

31. The CC Motion for Double H does not propose that the proceeds from the sale of the Remaining Cattle of Double H be turned over to KeyBank, despite the change in the business plan represented by the Tyson Contract.

## V. OBJECTIONS TO DOUBLE H'S USE OF CASH COLLATERAL

### A. First Objection.

32. The Double H offer of adequate protection to KeyBank of a replacement lien in new cattle is ephemeral, since Double H does not hold, or may not hold, an interest in replacement cattle under the new business plan represented by the Tyson Contract. As a result, Double H cannot make further use of KeyBank's cash collateral.

### B. Second Objection.

33. The Double H offer of adequate protection to KeyBank does not propose (a) how the Replacement Cows are necessary to the reorganization efforts of Double H; (b) why Double H's continuing ownership interest in the Replacement Cows advances the interests of Double H; or (c) how KeyBank's first perfected security interest in the Replacement Cows can be adequately protected under the circumstances posed by the change in the business plan of Double H as represented by the Tyson Contract.

### C. Third Objection.

34. The Tyson Contract and the Double H Budget propose diametrically opposing views of the character and nature of the Double H Cash Collateral on Hand and the Replacement Cows. The Double H Budget would lead the Court to believe that the Tyson Contract cattle are property of the estate, and that property of the estate (and cash collateral subject to KeyBank's first perfected security interest) should be utilized to pay the expenses relative to their care and husbandry. Under the terms of the Tyson Contract, it is clear that Tyson believes that (a) the Double H cattle belong to Tyson; and (b) the funds utilized to pay the expenses relative to their care and husbandry are paid by Tyson to Double H. Both of these characterizations cannot simultaneously be correct.

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR
EMERGENCY USE AND CONTINUING USE OF CASH
COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY - 8**

Client:1789791.1

### D. Fourth Objection.

35. Double H has made no cognizable offer of adequate protection regarding the Double H Cash Collateral on Hand or the Replacement Cows for purposes of use of cash collateral. As a result, Double H has no authority to utilize cash collateral.

### E. Fifth Objection.

36. The Tyson Contract is apparently an executory contract, which must be assumed or rejected by the Debtor/Double H pursuant to the terms of 11 U.S.C. § 365.

37. The Tyson Contract places inordinate risk upon the Debtor/Double H for the hedging activities of a third party, whose hedging practices or policies are unknown to KeyBank or the Debtor/Double H.

38. Failure of the Debtor to immediately reject the terms of the Tyson Contract may result in a catastrophic loss to the estate, which such loss might represent an unpaid priority claim or administrative claim, which such claim will make it impossible for the Debtor to confirm a Chapter 11 plan of reorganization.

39. The Debtor/Double H should be required immediately to either reject the Tyson Contract, or amend the Tyson Contract in such a manner as the inordinate risk placed on the Debtor/Double H is removed.

40. Pursuant to 11 U.S.C. § 363(e), this Court is authorized to "prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." Use of any cash collateral by Debtor/Double H should be prohibited for lack of adequate protection of KeyBank's interest until the Double H Cash Collateral on Hand and the sales proceeds from the Remaining Cattle are paid over to KeyBank as adequate protection. This is

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR
EMERGENCY USE AND CONTINUING USE OF CASH
COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY - 9**

Client:1789791.1

especially so given the change in the business plan of Double H as represented by the Tyson Contract.

41. Pursuant to 11 U.S.C. § 363(d)(2), the Debtor/Double H can use, sell or lease the Double H Cash Collateral on Hand or the sales proceeds from the Remaining Cattle, "only to the extent not inconsistent with any relief granted under subsection (c), (d), (e), or (f) of section 362."

42. KeyBank has filed a motion for stay relief as to Double H only ("Double H Stay Relief Motion"), seeking stay relief as to the Double H Cash Collateral on Hand and the sales proceeds from the Remaining Cattle.

43. Allowing use of cash collateral by the Debtor/Double H under the CC Motion would be contrary to the relief granted or to be granted by this Court in response to the Double H Stay Relief Motion.

**F.      Sixth Objection.**

44. The Tyson Contract is apparently an executory contract, which must be assumed or rejected by the Debtor/Double H pursuant to the terms of 11 U.S.C. § 365.

45. The Tyson Contract places inordinate risk upon the Debtor/Double H because it fails to identify the Tyson "Northwest True Value Grid" by which the price Tyson pays to Double H for cattle is determined.

46. Failure of the Debtor to immediately reject the terms of the Tyson Contract may result in a catastrophic loss to the estate, which such loss might represent an unpaid priority claim or administrative claim, which such claim will make it impossible for the Debtor to confirm a Chapter 11 plan of reorganization.

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR
EMERGENCY USE AND CONTINUING USE OF CASH
COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY - 10**

Client:1789791.1

47. The Debtor/Double H should be required immediately to either reject the Tyson Contract or amend the Tyson Contract in such a manner as the inordinate risk placed on the Debtor/Double H is removed.

48. Pursuant to 11 U.S.C. § 363(e), this Court is authorized as to cash collateral to "prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." Use of any cash collateral by Debtor/Double H should be prohibited for lack of adequate protection of KeyBank's interest until the Double H Cash Collateral on Hand and the sales proceeds from the Remaining Cattle are paid over to KeyBank as adequate protection. This is especially so given the change in the business plan of Double H as represented by the Tyson Contract.

49. Pursuant to 11 U.S.C. § 363(d)(2), the Debtor/Double H can use, sell or lease the Double H Cash Collateral on Hand or the sales proceeds from the Remaining Cattle, "only to the extent not inconsistent with any relief granted under subsection (c), (d), (e), or (f) of section 362."

50. KeyBank has filed its Double H Stay Relief Motion, seeking stay relief as to the Double H Cash Collateral on Hand and the sales proceeds from the Remaining Cattle.

51. Allowing use of cash collateral by the Debtor/Double H under the CC Motion would be contrary to the relief granted or to be granted by this Court in response to the Double H Stay Relief Motion.

### G. Seventh Objection.

52. The Tyson Contract is apparently an executory contract, which must be assumed or rejected by the Debtor/Double H pursuant to the terms of 11 U.S.C. § 365.

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR
EMERGENCY USE AND CONTINUING USE OF CASH
COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY - 11**

Client:1789791.1

53. The Tyson Contract places inordinate risk upon the Debtor/Double H because it fails to identify the "procurement costs" that Double H will incur in purchasing cattle under the Tyson Contract.

54. Failure of the Debtor to immediately reject the terms of the Tyson Contract may result in a catastrophic loss to the estate, which such loss might represent an unpaid priority claim or administrative claim, which such claim will make it impossible for the Debtor to confirm a Chapter 11 plan of reorganization.

55. The Debtor/Double H should be required immediately to either reject the Tyson Contract or amend the Tyson Contract in such a manner as the inordinate risk placed on the Debtor/Double H is removed.

56. Pursuant to 11 U.S.C. § 363(e), this Court is authorized as to cash collateral to "prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." Use of any cash collateral by Debtor/Double H should be prohibited for lack of adequate protection of KeyBank's interest until the Double H Cash Collateral on Hand and the sales proceeds from the Remaining Cattle are paid over to KeyBank as adequate protection. This is especially so given the change in the business plan of Double H as represented by the Tyson Contract.

57. Pursuant to 11 U.S.C. § 363(d)(2), the Debtor/Double H can use, sell or lease the Double H Cash Collateral on Hand or the sales proceeds from the Remaining Cattle, "only to the extent not inconsistent with any relief granted under subsection (c), (d), (e), or (f) of section 362."

58. KeyBank has filed its Double H Stay Relief Motion, seeking stay relief as to the Double H Cash Collateral on Hand and the sales proceeds from the Remaining Cattle.

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR
EMERGENCY USE AND CONTINUING USE OF CASH
COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY - 12**

Client:1789791.1

59. Allowing use of cash collateral by the Debtor/Double H under the CC Motion would be contrary to the relief granted or to be granted by this Court in response to the Double H Stay Relief Motion.

**H.    Eight Objection.**

60. The Double H Budget proposes that Double H will earn income of $300,000 per month from "feed income."

61. Despite this entry, the Double H Budget proposes that Double H will incur a monthly expense of $400,000 for "feed purchases."

62. To KeyBank's best knowledge, information and belief, Double H does not raise feed. Instead, Double H's sister entity, Hollifield Ranches, raises feed, and Double H's stockholder, Individual Hollifield, raises feed.

63. To KeyBank's best knowledge, information and belief, the Entities and Individual Hollifield transfer feed between one another, without maintaining correlative debit and credit entries in their books and records to reflect such transfers.

64. As a result of such transfers of feed without correlative accounting entries, the books and records of the Entities and Individual Hollifield do not reflect the true nature of the businesses of the Entities, and skew any financial records of the Entities.

65. Such inter-Entity transfers are reflected in the Double H Budget.

66. This Court cannot allow use of cash collateral by Double H until issues involving inter-Entity transfers of feed, and the lack of proper accounting for such transfers, are resolved.

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR
EMERGENCY USE AND CONTINUING USE OF CASH
COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY - 13**

I.  **Ninth Objection.**

67. To the extent the Double H Budget reflects the business operations of Double H, it anticipates a margin ("Margin") from the Tyson Contract of $325,000 per month, or over $4 million per year.

68. To the extent the Margin is in the amounts anticipated by the Double H Budget, KeyBank is entitled to adequate protection in the amount of 50% of each such Margin payment. Such payment will first be utilized to pay down and pay off the Double H Debt, then used to pay down and pay off the Hollifield Farms Debt and/or the While Gold Dairy Debt.

J.  **Tenth Objection.**

69. To the extent Double H is allowed by this Court to use any cash collateral, such use of cash collateral can occur only upon entry of an order of this Court requiring the Debtor to immediately:

- Release all Double H Cash Collateral on Hand to KeyBank;

- Release all cash collateral to be received by Double H in the future to KeyBank;

- Release all Remaining Cattle to KeyBank for sale by KeyBank, with application of all proceeds from such sale of the Remaining Cattle to the Double H Debt;

- Pay over to KeyBank, on a monthly basis, 50% of all Margin payments. Such payment will first be utilized to pay down and pay off the Double H Debt, then used to pay down and pay off the Hollifield Farms Debt and/or the While Gold Dairy Debt.

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR
EMERGENCY USE AND CONTINUING USE OF CASH
COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY - 14**

Client:1789791.1

DATED this 13th day of October, 2010.

                                            MOFFATT, THOMAS, BARRETT, ROCK &
                                            FIELDS, CHARTERED

By _____
       Noah G. Hillen – Of the Firm
       Attorneys for KeyBank National
       Association

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR
EMERGENCY USE AND CONTINUING USE OF CASH
COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY - 15**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of October, 2010, I filed the foregoing **OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR EMERGENCY USE AND CONTINUING USE OF CASH COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Brent T. Robinson**
btr@idlawfirm.com
*Attorneys for Debtor*

**Craig W. Christensen**
cwcc@ida.net
*Attorneys for J.R. Simplot*

**David F. Shirley**
dshirley@pmt.org
*Attorneys for Western Seeds*

**William R. Hollifield**
bhollifield@idalawyer.com
*Attorneys for Creditor C.W. Hollifield Estate*

**Scott Tschirgi**
sat@satchartered.com
*Attorney for Pioneer Commodities, LLC*

**Mary P. Kimmel**
ustp.region18.bs.ecf@usdoj.gov

**United States Trustee**
ustp.region18.bs.ecf@usdoj.gov

**John S. Ritchie**
crrtflaw@msn.com
*Attorneys for Eagle Creek Northwest LLC*

**David A. Heida**
dheida@capitollawgroup.net
*Attorneys for Wilbur-Ellis Company*

**Daniel C. Green**
dan@racinelaw.net
*Attorneys for Thomas Petroleum, LLC d/b/a Bowen Petroleum, Inc.*

**Robert J. Maynes**
mayneslaw@hotmail.com
*Attorney for ADM Edible Bean Specialties, Inc.*

**John O. Fitzgerald II**
jof@magicvalleylaw.com
*Attorneys for Agri-Stor Company, Inc./Chemical Supply Co., Inc.; OK Auto Systems, Inc.; and Robert Harris*

**David W. Gadd**
dwg@magicvalleylaw.com
*Attorneys for Agri-Stor Company, Inc./Chemical Supply Co., Inc.; OK Auto Systems, Inc.; and Robert Harris*

**J. Justin May**
jmay@may-law.com
*Attorneys for Wilbourn Garage Doors*

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR EMERGENCY USE AND CONTINUING USE OF CASH COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY - 16**

Client:1789791.1

AND, I FURTHER CERTIFY that on such date I served the foregoing **OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR EMERGENCY USE AND CONTINUING USE OF CASH COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY** on the following non-CM/ECF Registered Participants in the manner indicated:

| | |
|---|---|
| Hollifield Ranches, Inc.<br>4076 E. 3400 N.<br>Hansen, ID 83334 | (X) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile |
| Hollifield Ranches, Inc.<br>22866 US Highway 30<br>Hansen, ID 83334 | (X) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile |
| John O. Fitzgerald II<br>David W. Gadd<br>WORST FITZGERALD & STOVER, PLLC<br>746 N. College Rd., Suite C<br>P.O. Box 5226<br>Twin Falls, ID 83303-5226<br>*Attorneys for Agri-Stor Company, Inc./Chemical Supply Co., Inc.; OK Auto Systems, Inc.; and Robert Harris* | (X) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile |
| Tyson Fresh Meats, Inc.<br>2200 Don Tyson Parkway CP131<br>Springdale, AR 72762 | (X) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile |

*/s/ Noah G. Hillen*
Noah G. Hillen

**OBJECTION OF KEYBANK TO DEBTOR'S MOTION FOR EMERGENCY USE AND CONTINUING USE OF CASH COLLATERAL AS TO DOUBLE H CATTLE, LP ONLY - 17**

Client:1789791.1