Matthew T. Christensen
ANGSTMAN JOHNSON
3649 Lakeharbor Lane
Boise, Idaho 83703
Telephone: (208) 384-8588
Facsimile:  (208) 853-0117
Christensen ISB: 7213

Attorney for Interested Party/Creditor
Tyson Fresh Meats, Inc.

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

In re:

HOLLIFIELD RANCHES, INC.

      Debtor.

Case No.: 10-41613-JDP

(Chapter 11)

**MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM**

Tyson Fresh Meats, Inc. ("Tyson") by and through its counsel of record, ANGSTMAN JOHNSON, hereby moves the Court, pursuant to 11 U.S.C. §503(b) and 11 U.S.C. §365(g) for allowance and payment of an administrative claim in the amount of $958,511.47, based on a breach by the Debtor of the terms of the previously-assumed Tyson contract. In support of this Motion, Tyson asserts as follows:

1. The Debtor previously operated a number of businesses in Hansen, Idaho, including a cattle operation known as Double H Cattle, Inc. Prior to the petition date,

MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE
CLAIM - PAGE 1
Matter: 7081-001

1. Double H Cattle, Inc., had signed a "Feeding Agreement" with Tyson, a copy of which is attached hereto as **Exhibit A** (this Agreement is hereinafter referred to as the "Tyson Contract").

2. Just prior to filing its bankruptcy petition, the Debtor consolidated all of its various operations under the Hollifield Ranches, Inc., name.

3. The Debtor filed its voluntary Chapter 11 petition on September 9, 2010, and continued to operate the cattle businesses thereafter as a debtor-in-possession.

4. Subsequent to the petition being filed, the Debtor assumed the Tyson Contract. *See Docket Nos. 114 and 158*.

5. Based on the terms of the Tyson Contract, the Debtor purchased and fed cattle, for which it was reimbursed by Tyson. After the reimbursement costs were paid, the cattle were Tyson cattle (i.e., not property of the Debtor). After growing the cattle, the Debtor would deliver the cattle for slaughter. At the time of slaughter, a reconciliation took place, whereby the final price of the grown cattle was applied to the costs already reimbursed by Tyson. If the final price for the grown cattle was higher than the already-reimbursed amounts, Tyson paid the Debtor the difference. However, if the final price for the grown cattle was less than the already-reimbursed amounts, the Debtor was to pay Tyson the difference.[1]

6. After the assumption of the Tyson Contract, the Debtor and Tyson continued the growing relationship. Tyson continued to reimburse the Debtor for the procurement and feed costs. However, for most of the cattle purchased after the

---

[1] This paragraph is a general statement of the terms of the contract for the purposes of this motion. The specific terms, including interest and other fees or amounts that impacted the reimbursement amount and final price, can be found on the Tyson Contract itself.

MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM - PAGE 2
Matter: 7081-001

assumption of the contract, the final price of the cattle was lower than what had already been paid to the Debtor.  Accordingly, pursuant to the terms of the contract, the Debtor owed Tyson for the overpayment.  While the Debtor did make at least one payment to Tyson after the contract was assumed, nearly all of the amounts owed to Tyson under the contract were not paid by the Debtor.  ***See Exhibit B***, attached, which outlines the amounts due from the Debtor (in highlighted yellow).  At this point, the Debtor and Tyson have jointly moved to reject the previously-assumed contract (*see* Docket No. 342).

7.    Tyson's administrative expense claim ($958,511.47) is based on the amounts owed by the Debtor to Tyson after the reconciliation was performed on cattle procured and grown under the Tyson contract.

8.    Tyson believes this claim for allowance of administrative expenses is not subject to any set-off or counterclaim, and Tyson holds no security for the debt.

9.    Tyson is entitled to allowance and payment of this claim for administrative expense under the provisions of 11 U.S.C. §503(b)(1), 11 U.S.C. §365(g) and the decisions of various cases, including *Elliott v. Four Seasons Properties (In re Frontier Properties, Inc.)*, 979 F.2d 1358 (9th Cir., 1992) ("When a [DIP] assumes and then rejects an executory contract … all of the liabilities flowing from that rejection are entitled to priority as administrative expenses of the estate.")

/

/

/

/

MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM - PAGE 3
Matter: 7081-001

WHEREFORE, Tyson requests entry of an order of this Court allowing Tyson an administrative claim in the amount of $958,511.47 against the Debtor's estate, and directing payment of the same in accordance with the priorities of 11 U.S.C. §507(a).

DATED this 17th day of November, 2011.

                                        /s/
                              MATTHEW T. CHRISTENSEN
                              Attorney for Tyson Fresh Meats, Inc.

MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM - PAGE 4
Matter: 7081-001

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of November, 2011, I filed the foregoing document electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| Name | Email |
|---|---|
| Brent T. Robinson | btr@idlawfirm.com |
| Craig W. Christensen | cwcc@ida.net |
| David F. Shirley | dshirley@pmt.org |
| William R. Hollifield | bhollifield@idalawyer.com |
| Scott Tschirgi | sat@satchartered.com |
| Mary P. Kimmel | ustp.region18.bs.ecf@usdoj.gov |
| US Trustee | ustp.region18.bs.ecf@usdoj.gov |
| John S. Ritchie | crrtflaw@msn.com |
| David A. Heida | dheida@capitollawgroup.net |
| Daniel C. Green | dan@racinelaw.net |
| Robert J. Maynes | mayneslaw@hotmail.com |
| John O. Fitzgerald II | jof@magicvalleylaw.com |
| David W. Gadd | dwg@magicvalleylaw.com |
| J. Justin May | jmay@may-law.com |
| David A. Coleman | davidacoleman@msn.com |
| Ron Kerl | ron@cooper-larsen.com |
| Robert A. Faucher | rfaucher@hollandhart.com |
| Patrick W. McNulty | pwmcnulty@hollandhart.com |
| Kevin C. Braley | kbraley@hollandhart.com |
| Randy Peterman | rap@moffatt.com |
| Noah G. Hillen | ngh@moffatt.com |
| Matthew T. Christensen | mtc@angstman.com |

Others as noted on the Court's ECF notice.

/s/
Matthew T. Christensen

MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE
CLAIM - PAGE 5
Matter: 7081-001

# Tyson Fresh Meats Cattle Feeding Agreement with Double H Cattle Co.

Tyson Fresh Meats (TFM) hereby enters into a cattle feeding agreement with Double H Cattle Co. (Terry Hollifield), located at 4607 A East 3800 North, Hansen, ID 8334, the terms of which are as follows:

**Procurement and Volume:**

Double H Cattle Co. will procure feeder cattle into the program and provide feeding space for 5000 head of cattle. The feeding space will be turned approximately twice per year for an annual capacity of approximately 10,000. Double H Cattle Co. will feed and manage the cattle to an acceptable finished weight and provide them to TFM's Pasco, WA Plant for slaughter during the term hereof.

**Funding of Cattle**

Double H Cattle Co. will provide TFM supporting documentation in regards to procurement costs of feeder cattle showing the type, weight, kind and lot designation of the feeder cattle purchased. The placement costs will be presented to TFM upon completion of the procurement transaction. TFM will reimburse Double H Cattle Co, for all purchase costs upon review and approval by appropriate TFM management. TFM will handle the cost of feeder cattle as an advance payment in our systems. The parties are independent contractors and each is responsible for their own accounts. Double H Cattle Co will not place a security interest on the cattle fed under this agreement.

**Grow Costs**

Double H Cattle Co. will bill TFM twice monthly (1st and 15th) the costs associated with growing the cattle to market weight. The bills will be presented to accurately reflect costs by lot of cattle. After TFM receives the bill for feeding and grow costs, TFM will reimburse Double H Cattle Co. for all feeding and grow costs upon review and approval by appropriate TFM management. TFM will handle such costs as an advance payment in our systems. TFM will be allowed to audit Double H Cattle Co.'s records to confirm the feeding and grow costs, as well as the cost of feeder cattle, and Double H Cattle Co. will keep all such records for a period of at least 2 years.

**Cattle Delivery and Market Value**

Double H Cattle Co. and TFM cattle buyers will coordinate the scheduling and delivery of market ready cattle to TFM's Pasco plant for slaughter. The market value of the cattle shall be

determined by TFM's Northwest True Value Grid. Cattle presented for slaughter will be grouped by Double H Cattle Co. identified lot designation. No individual delivery should contain cattle from more than one individual lot. The Market Price will not be paid to Double H Cattle Co. since TFM has advanced the costs for such cattle, and instead the amounts Double H Cattle Co. will be entitled to receive, if any, will be calculated as shown in the section titled "Settlement and Return on Investment."

**Risk Management**

TFM will be responsible for management of market risks through the reasonable and customary use of hedging practices on the cattle placed for feeding under this agreement, except in the event Double H Cattle Co. requests different hedging practices, at which time the parties shall mutually agree as to what hedging practices to undertake hereunder. The gain/loss resulting from this hedging activity will be included in settlement between Double H Cattle Co. and TFM for each lot of cattle. In the event cattle are delivered from multiple lots in any given week, the hedge revenue or cost will be allocated to each lot on a dollars per head basis.

**Interest Costs**

TFM agrees to advance Double H Cattle Co. 100% of the procurement and growing costs of cattle. As such Double H Cattle Co. will not charge TFM any interest costs. TFM will incur costs of interest as a result of funding the cattle. TFM interest rate as agreed upon will be Libor plus 4%. This rate will be reviewed and updated periodically throughout the agreement. Double H Cattle Co. will include TFM's interest cost as part of each lot's final production cost.

**Settlement and Return on Investment**

Double H Cattle Co. has guaranteed TFM a fixed return of $15.00 per head feeding profit on all cattle fed under this program. Within one week after the final head of a lot is delivered to TFM's Pasco WA plant, the final settlement on the lot will be calculated. The calculation will be similar to the following examples:

Example #1:

| | |
|---|---|
| Head in Lot: | 500 |
| Gross Market Value | $588,000 |
| Less: Freight | ($1,500) |
| Less: Beef Council | ($500) |

| | | |
|---|---|---|
| Hedge Gain/(Loss) | $10,000 | |
| Less: Cattle and Grow Cost | ($570,000) | (Includes TFM interest cost) |
| Net Lot Profit/(Loss) | $26,000 | |
| Profit/Loss $/HD | $52.00 | |
| TFM Fixed Return | $15.00 | |
| Settlement | $37.00/Head or $18,500 | |

In example #1, TFM owes Double H Cattle Co. $37.00 per head or $18,500. The settlement is to be paid within 5 business days after the settlement amount is determined.

**Example #2:**

| | | |
|---|---|---|
| Head in Lot: | 500 | |
| Gross Market Value | $588,000 | |
| Less: Freight | ($1,500) | |
| Less: Beef Council | ($500) | |
| Hedge Gain/(Loss) | ($10,000) | |
| Less: Cattle and Grow Cost | ($590,000) | (Includes TFM interest cost) |
| Net Lot Profit/(Loss) | ($14,000) | |
| Profit/Loss $/Hd | ($28.00) | |
| TFM Fixed Return | $15.00 | |
| Settlement | ($43.00)/Head or ($21,500) | |

In Example #2 Double H Cattle Co. owes TFM $43.00 per head or $21,500. The settlement is to be paid within 5 business days after the settlement amount is determined.

**Contract Duration:**

This agreement can be terminated by either party at any time during the term (as defined below) by providing the other party written notice of termination. In the event a party provides such written termination notice hereunder and cattle are still being fed under the terms of this agreement, the parties agree that such cattle will continue to be fed, delivered and paid for under the terms of this agreement; however, no additional cattle will be placed on feed after receipt of such notice. The parties agree that Double H Cattle Co. shall not place any new feeder cattle under this agreement later than three (3) years from the date last written below (the "term") unless otherwise permitted by the parties in a subsequent writing. Notwithstanding the above, if there is any federal, state or local law or regulation which prohibits the feeding of cattle pursuant to the terms of this agreement, as determined by TFM, then this agreement can be terminated immediately by TFM and TFM will be repaid for any feeder cattle and growing costs it has advanced to Double H Cattle Co. for cattle still being fed.

NOTICE: The parties believe this transaction to be a feeding relationship, but to the extent a government agency determines this to be the sale of cattle, Double H Cattle Co. has contemporaneously executed an acknowledgment under Section 201.200 of the Packers and Stockyards Act (1921).

In witness whereof, the parties have signed this Agreement as of the date indicated below.

TYSON FRESH MEATS, INC.

By: _____
Title: Director of Cattle Procurement
Date: 6/9/10

DOUBLE H CATTLE CO.

By: _____
Title: _____
Date: 5/28/10

## ACKNOWLEDGMENT

On this date I am entering into a written agreement for the sale of livestock on credit to Tyson Fresh Meats, Inc., a packer, and I understand that in doing so I will have no rights under the trust provisions of section 206 of the Packers and Stockyards Act, 1921, as amended (7 U.S.C. 196, Pub. L. 94-410), with respect to any such credit sale. The written agreement for such selling on credit provides that it will remain in effect for three years from the date written below or until canceled in writing by either party, whichever is earlier.

Double H Cattle Co.

By: _[signature]_

Date: 5/25/10

## Double H cattle - Pioneer 100%

| Lot | Head | Net Profit/(Loss)/HD | Fixed Return | Settlement $/HD | Settlement Total $ | |
|---|---|---|---|---|---|---|
| 771 | 165 | ($300.70) | $15.00 | ($315.70) | $52,090.23 | |
| 775 | 148 | ($206.22) | $15.00 | ($221.22) | $32,741.10 | |
| 781 | 179 | ($185.12) | $15.00 | ($200.12) | $35,820.77 | |
| 800 | 76 | $102.74 | $15.00 | $87.74 | ($6,668.40) | |
| 820 | 66 | ($38.98) | $15.00 | ($53.98) | $3,562.36 | |
| 826 | 318 | ($302.90) | $15.00 | ($317.90) | $101,092.58 | |
| 832 | 92 | ($125.88) | $15.00 | ($140.88) | $12,961.25 | |
| 834 | 148 | ($146.42) | $15.00 | ($161.42) | $23,890.02 | |
| 842 | 176 | ($158.67) | $15.00 | ($173.67) | $30,565.83 | |
| | | | | | $286,055.74 | DECEMBER AND JANUARY |
| | | | | **Amount owed to Tyson** | **$286,055.74** | billed to producer 3/5/11 |
| | | | | Amount owed to Double H cattle | $ - | |
| 735 | 248 | ($191.58) | $15.00 | ($206.58) | $51,232.99 | |
| 743 | 227 | ($356.42) | $15.00 | ($371.42) | $84,313.13 | |
| 745 | 131 | ($331.59) | $15.00 | ($346.59) | $45,403.52 | |
| 751 | 69 | ($387.95) | $15.00 | ($402.95) | $27,803.47 | |
| 773 | 187 | ($371.74) | $15.00 | ($386.74) | $72,319.56 | |
| 840 | 108 | ($317.88) | $15.00 | ($322.82) | $35,951.47 | |
| 836 | 143 | ($246.40) | $15.00 | ($261.40) | $37,379.76 | |
| | | | | | $354,403.90 | FEBRUARY |
| | | | | **Amount owed to Tyson** | **$354,403.90** | sent 4/11/11 |
| | | | | Amount owed to Double H cattle | $ - | |
| 791 | 335 | ($219.87) | $15.00 | ($234.87) | $59,724.91 | |
| 790 | 179 | ($138.02) | $15.00 | ($153.02) | $17,733.49 | |
| 793 | 52 | ($183.73) | $15.00 | ($198.73) | $8,414.11 | |
| 814 | 71 | ($838.89) | $15.00 | ($853.89) | $14,532.44 | |
| 818 | 50 | ($371.59) | $15.00 | ($386.59) | $8,095.80 | |
| 828 | 116 | ($77.33) | $15.00 | ($92.33) | $29,615.13 | |

EXHIBIT B

| | | | | | | |
|---|---|---|---|---|---|---|
| 852 | 289 | ($144.53) | $15.00 | ($159.53) | $53,853.73 | |
| 767 | 233 | ($80.76) | $15.00 | ($95.76) | $71,896.80 | |
| 777 | 197 | ($112.89) | $15.00 | ($127.89) | $24,591.29 | |
| 779 | 92 | ($0.88) | $15.00 | ($15.88) | $709.27 | |
| 783 | 74 | ($412.08) | $15.00 | ($427.08) | $16,775.63 | |
| 785 | 134 | ($236.15) | $15.00 | ($251.15) | $33,819.90 | |
| 787 | 52 | ($33.24) | $15.00 | ($48.24) | $10,114.40 | |
| | | | | | $349,876.90 | MARCH |
| | | | | Amount owed to Tyson | $349,876.90 | |
| | | | | Amount owed to Double H cattle | $ - | |
| 846 | 137 | ($224.66) | $15.00 | ($209.66) | $30,779.09 | |
| 753 | 476 | ($129.81) | $15.00 | ($144.81) | $68,930.86 | |
| 789 | 416 | ($170.66) | $15.00 | ($185.66) | $77,123.81 | |
| 830 | 116 | $0.99 | $15.00 | ($14.01) | $1,625.49 | |
| 850 | 48 | ($53.95) | $15.00 | ($68.95) | $3,309.47 | |
| | | | | | $181,768.72 | APRIL |
| | | | | Amount owed to Tyson | $181,768.72 | |
| | | | | Amount owed to Double H cattle | $ - | |
| 799 | 98 | ($114.44) | $15.00 | ($129.44) | $12,721.36 | |
| 795 | 47 | ($55.47) | $15.00 | ($70.47) | $3,425.07 | |
| | | | | | $16,146.43 | MAY / JUNE |
| | | | | Amount owed to Tyson | $16,146.43 | |
| | | | | Amount owed to Double H cattle | $ - | |
| 797 | 146 | ($17.63) | $15.00 | ($32.63) | $4,763.27 | |
| 801 | 109 | ($79.76) | $15.00 | ($94.76) | $10,329.19 | |
| 803 | 52 | ($130.94) | $15.00 | ($145.94) | $7,588.75 | |
| 844 | 250 | ($0.50) | $15.00 | ($15.50) | $3,875.86 | |
| 854 | 29 | ($130.79) | $15.00 | ($145.79) | $4,227.99 | |
| 856 | 67 | $5.78 | $15.00 | ($9.22) | $617.74 | |
| 858 | 77 | ($24.81) | $15.00 | ($39.81) | $3,065.74 | |
| 862 | 41 | $52.11 | $15.00 | $37.11 | ($1,521.66) | |
| 866 | 113 | ($58.62) | $15.00 | ($73.62) | $8,319.42 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 860 | 119 | ($56.07) | $15.00 | ($71.07) | $8,457.08 | |
| 864 | 45 | ($131.49) | $15.00 | ($146.49) | $6,592.14 | |
| | | | | | $56,315.52 | August and September  October |
| | | | **Amount owed to Tyson** | | $56,315.52 | |
| | | | **Amount owed to Double H cattle** | $ | - | |

**TOTAL OWED TO TYSON**        $958,511.47